UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| PAMELA D. HARRIS, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | No. 1:15-cv-01952-JMS-MJD |
| CARRIER CORPORATION, | ) | |
| Defendant. | ) | |

# ORDER

This matter involves Plaintiff Pamela D. Harris's allegations that Defendant Carrier Corporation ("Carrier") retaliated against her for filing charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Pending before the Court is Carrier's Motion for Summary Judgment, [Filing No. 83], in which Carrier contends that Ms. Harris's claims fail as a matter of law. For the following reasons, the Court **GRANTS** Carrier's Motion.

## I.
## LEGAL STANDARD

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B).

Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not suffice to defeat summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable factfinder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially

relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## II.
### BACKGROUND

As this case comes before the Court, there are limited facts that are relevant to Carrier's Motion. This is because while Ms. Harris's Amended Complaint alleged five counts of employment discrimination, [Filing No. 49], she has cast aside four of her five counts in subsequent filings. First, Ms. Harris's Statement of Claims, [Filing No. 73], confirmed that she is no longer pursuing her claims for race and age discrimination. [*See also* Filing No. 74 at 1 (order in which the Court noted forfeited claims).] Second, in her response to Carrier's Motion for Summary Judgment, Ms. Harris further confirmed that she is longer pursuing her claims for sex and disability discrimination. [Filing No. 91 at 1.]

The lone claim remaining is Ms. Harris's retaliation claim. The scope of this claim, however, is not entirely clear. Ms. Harris's response to Carrier's Motion for Summary Judgment suggests three possible adverse actions that she claims were taken in retaliation for her EEOC charges:

- Failing to provide Ms. Harris with her Certificate of Completion of Apprenticeship after Ms. Harris completed her apprenticeship program,
- Denying Ms. Harris's worker's compensation claim for not being work-related, and
- After Ms. Harris took medical leave due to her injuries, denying Ms. Harris a job that would accommodate her limitations.

In its reply brief, Carrier contends that none of these theories of retaliation may proceed for various reasons, including that that claims contradict Ms. Harris's sworn deposition testimony

3

as to the basis for her claims, were not included in Ms. Harris's Amended Complaint, and/or were omitted from Ms. Harris's Statement of Claims. Carrier argues that Ms. Harris's response to its Motion for Summary Judgment is merely an attempt to set a "moving target" on summary judgment.

The approved Case Management Plan in this case, entered as an Order of the Court, required Ms. Harris to "file a statement of the claims . . . [she] intends to prove at trial, stating *specifically* the legal theories upon which the claims . . . are based." [Filing No. 73 at 3 (emphasis added).] The Statement of Claims requirement in the Uniform Case Management Plan represents the Court's effort to prevent parties from presenting "moving targets" to unfairly avoid summary judgment. *See, e.g.*, *Moultrie v. Penn Aluminum Int'l, LLC*, 766 F.3d 747, 753 (7th Cir. 2014) (criticizing a plaintiff for presenting claims that were "something of a moving target"); *Kough v. Teamsters' Local 301 Pension Plan*, 437 F. App'x 483, 485 (7th Cir. 2011) ("The case was a moving target for the district court, but it has stopped long enough for us to take aim here."); *Tauber v. City of Chi.*, 33 F. Supp. 2d 699, 700 (N.D. Ill. 1999) (requiring parties to submit issue statement "in an effort to eliminate the ships-passing-in-the-night phenomenon"). The Statement of Claims is to be filed following the close of and as informed by liability discovery, but before summary judgment motions are filed. The Statement of Claims should provide each party with a clear idea of the other's legal theories, enabling the parties to directly address one another's positions. As the Court made clear in its Order on Defendant's Motion to Dismiss, a party may not pursue a claim that it neglects to include in its Statement of Claims. *See* [Filing No. 74 at 1 (noting claims forfeited for failure to include in statement of claims)]; *see also, e.g.*, *Dzik v. Bayer Corp.*, 846 F.3d 211, 212 (7th Cir. 2017) (per curiam) (affirming dismissal with prejudice where, among other things, plaintiff "flouted the requirements of a case-management order").

4

Ms. Harris's Statement of Claims states that "Carrier retaliated by denying Harris's worker's compensation claim for her original injury, and by denying her a reasonable accommodation for her disabilities." [Filing No. 73 at 4.] Nowhere, however, does it mention the certificate withholding theory, which appeared for the first time in Ms. Harris's response brief. At each turn in this litigation, whenever Ms. Harris has been faced with arguments demonstrating that a claim may lack merit, Ms. Harris has abandoned the claim and substituted a new one in its stead. The Court will not permit this to continue on summary judgment. The Court considers Ms. Harris's certificate withholding theory forfeited and will not address it any further.

Therefore, all that remains for consideration is Ms. Harris's claims for unlawful retaliation based upon the denial of her worker's compensation claim and the failure to accommodate. Ms. Harris does not present any admissible evidence to contest many of the underlying material facts set forth by Carrier, so the Court recounts them as outlined in Carrier's statement of material facts not in dispute, [Filing No. 84 at 2-15], and as supplemented by Ms. Harris's response brief, [Filing No. 91]. The Court draws all reasonable inferences in Ms. Harris's favor as the nonmoving party.

**A. Employment at Carrier**

Ms. Harris began working at Carrier in February 2005. [Filing No. 83-1 at 16.] In 2007, Ms. Harris passed a test to be placed on a waiting list for Carrier's Journey Worker Apprentice Program which, upon completion, would allow Ms. Harris to work as a machine repairperson. [Filing No. 83-1 at 26-29.] In March 2008, Ms. Harris joined the Apprentice Program and received a pay raise. [Filing No. 83-1 at 26-29; Filing No. 83-6 at 2.]

In January 2009, Carrier suspended the Apprentice Program due to the economic downturn. [Filing No. 83-3 at 4.] Ms. Harris was reassigned to her previous position until she was laid off in March 2009 as part of a reduction in force. [Filing No. 83-1 at 32-33.] In January 2010, Carrier

rehired Ms. Harris for a different position. [Filing No. 83-1 at 37; Filing No. 83-11 at 2.] In July 2010, Carrier reassigned Ms. Harris to its reinstated Apprentice Program. [Filing No. 83-3 at 37.]

In August 2013, Ms. Harris completed the educational and training requirements to become a Journey Worker. [Filing No. 83-3 at 3.] In September 2013, Ms. Harris was officially promoted to Journey Worker. [Filing No. 83-6 at 2.]

### B. Injury and Attempts to Accommodate

Ms. Harris worked as a Journey Worker for Carrier from September 2013 until June 30, 2015, when she suffered an injury. [Filing No. 83-1 at 168.] Ms. Harris filed a workers' compensation claim. [Filing No. 83-1 at 174-75.] In July 2015, Ms. Harris's claim was denied by AIG, Carrier's insurer, because the insurer determined that Ms. Harris's injury was not work related. [Filing No. 83-1 at 174-75; Filing No. 83-3 at 4; Filing No. 83-15 at 2.] A physician employed by Carrier informed Ms. Harris of the decision. [Filing No. 92-3 at 3.]

After her June 30, 2015 injury, Ms. Harris required medical leave and a variety of work limitations due to her conditions. [Filing No. 83-1 at 203-04.] On July 7, 2015, Ms. Harris returned to Carrier, performing miscellaneous repair and maintenance, [Filing No. 83-1 at 44; Filing No. 83-1 at 169-70], until she returned to medical leave on July 21, [Filing No. 83-1 at 170-71; Filing No. 83-1 at 206]. Carrier's doctor told Ms. Harris that she could not return to her Journey Worker position until her doctor cleared her to perform the job duties. [Filing No. 83-1 at 171.]

On July 29, 2015, Ms. Harris visited her personal physician, Dr. Booher, reporting that she had injured her left shoulder and that it was hard to lift weight with her left arm. [Filing No. 83-1 at 172-73.] Dr. Booher determined that Ms. Harris could not be released for work. [Filing No. 83-1 at 173; Filing No. 83-13 at 3.] As part of Ms. Harris's application for short term disability

6

benefits, Dr. Booher determined that Ms. Harris was "totally disabled" beginning June 28, 2015, and estimated that she could return to work on September 1, 2015. [Filing No. 83-14 at 3.]

On September 11, 2015, Dr. Booher cleared Ms. Harris to work with restrictions, including limitations in the use of her left arm and prohibitions on overhead lifting, lifting more than five pounds, and pulling more than twenty pounds. [Filing No. 83-16 at 2.] These restrictions limited Ms. Harris to only one of the primary duties of the Journey Worker position: bench repair. [Filing No. 83-1 at 179-80.] Ms. Harris requested that she return to work as a Journey Worker with the required restrictions. [Filing No. 83-1 at 177.]

Carrier's Joint Restrictions Committee, comprised of representatives from Ms. Harris's union and from Carrier's environmental health and safety, medical, and human resources departments, considered Ms. Harris's request and determined that she could not perform the Journey Worker position with her required restrictions. [Filing No. 83-3 at 4.] On September 21, 2015, Carrier provided Ms. Harris with a written notice that it could not accommodate Ms. Harris's limitations and asked Ms. Harris to keep Carrier informed of any changes in her condition. [Filing No. 83-1 at 178-79; Filing No. 83-17 at 2.]

On March 9, 2016, Ms. Harris wrote to Carrier requesting that it assign her to a position that could accommodate her limitations. [Filing No. 83-18 at 2.] In response, Carrier discussed three open positions with Ms. Harris and a union representative. [Filing No. 83-1 at 192-203; Filing No. 83-3 at 5; Filing No. 83-19 at 2.] Ms. Harris, however, believed that the various positions posed a risk of injury to her uninjured hand and other ergonometric problems. [Filing No. 83-1 at 193-94.] These discussions continued through June 2016, though ultimately Ms. Harris and Carrier elected not to reassign Ms. Harris to one of the three proposed positions due to concerns about her ability to safely perform the job requirements. [Filing No. 83-3 at 5.]

7

On August 24, 2016, Carrier reassigned Ms. Harris to work as a "Precision Inspector" after Ms. Harris and union officials agreed that she could perform the job. [[Filing No. 83-1 at 203-04; Filing No. 83-3 at 5](#).] On September 22, 2016, Ms. Harris left the position and returned to medical leave, explaining that performing the job tasks caused her pain. [[Filing No. 83-1 at 203-04](#).] Ms. Harris has been on medical leave since she left the Precision Inspector position in September 2016. [[Filing No. 83-1 at 206](#).]

**C. EEOC Charges & Proceedings in this Court**

As relevant to this case, Ms. Harris filed her first EEOC Charge of Discrimination concerning her treatment at Carrier on July 24, 2013. [[Filing No. 92-3 at 2](#).] In her first EEOC Charge, Ms. Harris alleged retaliation and discrimination based on race, sex, age, and disability. [[Filing No. 92-3 at 2](#).] Ms. Harris filed her second EEOC Charge of Discrimination on December 3, 2015, alleging retaliation and discrimination based on sex, age, and disability. [[Filing No. 92-4 at 2-7](#).]

Ms. Harris filed her Complaint in this Court on December 11, 2015, [[Filing No. 1](#)], and her currently operative Amended Complaint on October 5, 2016, [[Filing No. 49](#)]. Carrier now seeks summary judgment on Ms. Harris's remaining claims. [[Filing No. 84](#).]

## III.
### DISCUSSION

As discussed above, the lone claims remaining in this case are Ms. Harris's claims for retaliatory denial of her worker's compensation claim and for retaliatory failure to accommodate her disability. Carrier first argues that these claims contradict Ms. Harris's sworn deposition testimony before proceeding to address their merits.

Ms. Harris's deposition testimony does suggest that the basis for her retaliation claim is a denial of overtime for reporting a safety violation. [[Filing No. 83-1 at 166](#).] However, as a lay

witness, Ms. Harris may well not have fully grasped that the import of the question about her legal theories and, at any rate, her testimony is less than definitive. [*See, e.g.*, Filing No. 83-1 at 166-68 (as one example, in response to counsel's question, "Anything else that forms the basis of your retaliation claim?", Ms. Harris answered, "Him or somebody else?").] Under these circumstances, the Court finds it appropriate to address the merits of Ms. Harris's claims rather than resolve them on the basis of the purported inconsistency.

To defeat a motion for summary judgment on a retaliation claim, a plaintiff must provide "evidence of (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017) (internal quotation omitted).

First, Carrier contends that Ms. Harris's claim for denial of her worker's compensation claim fails because it was the outside insurer that denied her claim, not Carrier. Thus, the denial was not an action "taken by the employer." Ms. Harris argues that because she was told about the denial by a Carrier-employed doctor, a reasonable juror could conclude that it was Carrier which denied her claim.

Ms. Harris's position is untenable. The evidence provided by Carrier, in the form of a Notice of Denial of Benefits from the Indiana Worker's Compensation Board, [Filing No. 83-15], and an affidavit from Carrier's Senior Human Resources Manager, [Filing No. 83-3 at 4], demonstrates that it was Carrier's insurer that made the decision to deny Ms. Harris's worker's compensation claim, not Carrier. Ms. Harris's statement that someone from Carrier informed Ms. Harris of the decision to deny benefits is not sufficient to create a genuine issue of fact as to whether the insurer denied Ms. Harris's claim, and Ms. Harris does not contend that Carrier's insurer was Ms. Harris's employer. *Cf. Schandelmeier-Bartels v. Chi. Park Dist.*, 634 F.3d 372, 380 (7th Cir.

9

2011) ("Title VII is written in terms of what the employer is prohibited from doing."). Summary judgment is therefore required on Ms. Harris's allegation that her worker's compensation claim was denied in retaliation for filing an EEOC charge.

Finally, Carrier argues that summary judgment is required as to each retaliation theory because Ms. Harris has provided no evidence of a causal connection between her EEOC charges and the adverse actions. Ms. Harris's response to this argument, in its entirety, provides as follows:

> Harris filed her first EEOC charge in July 2013. She finished her apprenticeship program only 60 days later. However, it took her three years to obtain her certificate.
>
> Harris filed her second EEOC charge in December of 2015. In March 2016, Harris asked to return to work in a job outside her machine repair specialty. The only jobs Carrier offered were jobs that would have threatened Harris's *uninjured* hand. It is significant that Harris's counsel first entered his appearance on Harris's behalf on March 1, 2016.

[Filing No. 91 at 7 (emphasis in original) (citations omitted).] In other words, Ms. Harris argues that the adverse actions took place close in time to her EEOC charges.

To establish the required causal connection, a plaintiff must show that the defendant "would not have taken the adverse . . . action but for [her] protected activity." *Baines*, 863 F.3d at 661 (alterations in original) (quoting *King v. Preferred Technical Grp.*, 166 F.3d 887, 892 (7th Cir. 1999)). The plaintiff may show this with "direct" evidence, such as an admission of discriminatory animus, or by "circumstantial" evidence, but as long as the plaintiff provides "enough to allow the trier of fact to conclude that it is more likely than not that discrimination lay behind the adverse action, then summary judgment for the defendant is not appropriate." *Id.* (quoting *Morgan v. SVT, LLC*, 724 F.3d 990, 996 (7th Cir. 2013)); *see Lauth v. Covance, Inc.* 863 F.3d 708, 716 (7th Cir. 2017) ("[W]e no longer recognize a distinction between direct or indirect evidence, and instead consider all of the record to determine whether a causal link exists."). But

"suspicious timing is almost always insufficient" to establish the causal connection required to survive summary judgment. *Leitgen v. Fanciscan Skemp Healthcare, Inc.*, 630 F.3d 668, 675 (7th Cir. 2011); *e.g.*, *Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 316 (7th Cir. 2011) ("Suspicious timing may be just that—suspicious—and a suspicion is not enough to get past a motion for summary judgment."). Unless suspicious timing is paired with other evidence, the plaintiff may not avoid summary judgment unless there are "no more than a few days . . . between the protected activity and the adverse action" and the plaintiff demonstrates that the "person who decided to impose the adverse action knew of the protected conduct. *Kidwell v. Eisenhauer*, 679 F.3d 957, 966-67 (7th Cir. 2012) (internal quotation omitted) (collecting cases).

The first paragraph of Ms. Harris's argument relates only to the forfeited certificate withholding theory, which warrants no further discussion. The second paragraph baldly suggests that the time between Ms. Harris's EEOC charges and the alleged adverse actions was suspicious. The Court cannot agree. First, Ms. Harris's July 2015 worker's compensation denial comes two years after she filed her first EEOC Charge in July 2013 and five months before she filed her second EEOC Charge in December 2015. The two-year time gap between Ms. Harris's first EEOC Charge and worker's compensation denial belies any reasonable inference of suspicious timing.

Second, the alleged denial of a reasonable accommodation occurred after Ms. Harris's requested a job in March 2016, three months after she filed her second EEOC charge. A review of the sequence of events before and after Ms. Harris's December 2015 EEOC Charge reveals why this timing could not possibly yield a reasonable inference of causation:

- On September 21, 2015, prior to Ms. Harris filing her second EEOC Charge, Carrier's Joint Restrictions Committee determined that it could not accommodate Ms. Harris at her

- Journey Worker position. Carrier invited Ms. Harris to reach out when her condition changed.

- On December 3, 2015, Ms. Harris filed her second EEOC charge.

- On March 9, 2016, Ms. Harris followed up with Carrier's invitation for Ms. Harris to reach out and requested a position that could accommodate her restrictions.

- Between March and June 2016, Carrier discussed with Harris the possibility of returning to one of three positions. Eventually, the parties agreed that no position would sufficiently accommodate Ms. Harris's limitations.

- From August 24 to September 22, 2016, Ms. Harris worked as a Precision Inspector after Ms. Harris, Carrier, and a union representative agreed that she could perform that position.

- On September 22, 2017, after enduring pain in her new position, Harris returned to medical leave.

Ms. Harris simply does not explain how the filing of the EEOC Charge is in any way connected, temporally or otherwise, to the denial of an accommodation. To the contrary, the only reasonable inference is that as soon as Ms. Harris reached out in March 2016, as previously invited by Carrier, Carrier immediately began discussing job opportunities with Ms. Harris. When Ms. Harris asked, Carrier responded and ultimately provided Ms. Harris with another job, albeit one that she quickly left due to pain. Finally, Ms. Harris has not identified any evidence suggesting that Carrier's Joint Restrictions Committee had knowledge of her EEOC charges at the time it made its decisions regarding Ms. Harris's accommodations. On this record, no reasonable jury could find that any lack of accommodation was caused by the filing of Ms. Harris's EEOC Charge. Accordingly, summary judgment is required as to each of Ms. Harris's retaliation claims.[1]

---

[1] In light of this conclusion, the Court need not address Carrier's additional arguments.

As one final point, district courts across the Seventh Circuit have recognized that "[a] 'failure to accommodate' cannot serve as an adverse action for an ADA retaliation claim because it merely restates an underlying failure to accommodate claim, because otherwise "almost every failure to accommodate claim would be simultaneously a retaliation claim." *Moore-Fotso v. Bd. of Educ. of the City of Chicago*, 211 F. Supp. 3d 1012, 1037 (N.D. Ill. 2016) (internal quotation omitted) (collecting cases). While Carrier did not raise this argument, "[s]ua sponte dismissals for failure to state a claim upon which relief may be granted are permitted, provided a sufficient basis for the court's action is apparent from plaintiff's pleading." *Apostol v. Landau*, 957 F.2d 339, 343 (7th Cir. 1992). The insufficiency of Ms. Harris's retaliatory failure to accommodate claim is apparent from Ms. Harris's briefing and the undisputed evidence, and summary judgment is therefore appropriate on this claim for this additional reason.

### IV.
#### CONCLUSION

The Seventh Circuit has frequently said that "summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson*, 325 F.3d at 901 (internal quotation omitted). Ms. Harris has provided no evidence from which a juror could reasonably infer that Ms. Harris suffered a retaliatory action because of her EEOC charges. Accordingly, the Court **GRANTS** Carrier's Motion for Summary Judgment. [Filing No. 83.] Final judgment will issue accordingly.

Date: 9/13/2017

*[signature]*
Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**